IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-02563-RPM

JETAWAY AVIATION, LLC, a Colorado Limited Liability Company,

           Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTROSE,
COLORADO;
MONTROSE COUNTY BUILDING AUTHORITY, a Colorado Nonprofit Corporation;
JET CENTER PARTNERS, LLC, a Colorado Limited Liability Company;
BLACK CANYON JET CENTER, LLC., a Colorado Limited Liability Company;
WILLIAM PATTERSON;
KEVIN EGAN; and
JAMES RUMBLE,

           Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

      The plaintiff in this case is JetAway Aviation, LLC ("JetAway"), a Colorado limited

liability company in which Steve Stuhmer is the managing principal, as plaintiff.  The

defendants are The Board of County Commissioners of the County of Montrose,

Colorado; Montrose County Building Authority, a Colorado Nonprofit Corporation; Jet

Center Partners LLC, a Colorado Limited Liability Company; William Patterson; Kevin

Egan; and James Rumble.  Black Canyon Jet Center LLC, a Colorado limited liability

company, was merged into JCP and is no longer an entity.

      JetAway claims that all of the defendants acted collusively to prevent it from

providing services to the public as a fixed base operator ("FBO") on the Montrose

Regional Airport in Montrose County, Colorado ("Airport").  The geographical location of

the Airport makes it attractive to general aviation for tourists and recreational users for

southwest Colorado destinations, particularly the ski and resort facilities at Telluride, Crested Butte and other nearby attractions.  It serves commercial airlines and local general aviation users as well.

FBO services were provided by V.I.P. Flyers, a Colorado corporation until 1991 when the District Court for Montrose County entered a permanent injunction against it for a violation of certain agreements.  James Rumble ("Rumble") owned and managed that company.

From 1991 to January, 2006, the County provided FBO services, including the sale of aviation fuel and a terminal for the use of pilots and passengers of private aircraft.  The terminal building was closed in 2002 because of asbestos concerns.  The County installed a double-wide trailer as a temporary measure.

The governing authority for Montrose County is a three member Board of County Commissioners ("BOCC").  Recognizing the need for better facilities, the BOCC began consideration of contracting with a private provider for services.  The members then were David Ubell, Betsy Hale and Leo Lange.

Rumble, Kevin Scott and Kevin Egan formed a business in 2002 for the single purpose of obtaining and operating an FBO at the Airport.  Scott had FBOs at other comparable airports.

The question of privatization of the Airport was discussed publicly in Montrose.  William Patterson had been the Treasurer of the Airport authority when V.I.P. Flyers had the FBO and he was well acquainted with Rumble.  Both of them lived in Montrose.

All three members of the BOCC favored privatization and they directed the County Attorney, James Fritze to draft a Request for Proposal ("RFP") and to develop

minimum standards for FBO operations at the Airport.

In 2004, the BOCC retained a financial consulting firm to compare the anticipated financial results of privatization with continuing County operation, which would require an estimated $2 million investment in necessary capital improvements.  The reported conclusion was that projected cash flows for the period 2006 through 2010 made continued county operation the more appropriate action.

The question of privatization of the Airport was discussed in the election for county commissioners in November 2004.  Patterson and Allan Belt, proponents of privatization, were elected.  They joined the incumbent, Ubell, in January, 2005.

In 2004, JetAway purchased a building adjacent to the Airport that had been used as a manufacturing facility.  Through agreements with the County, JetAway began providing "through the fence" FBO services to Airport users but it was restricted from selling aviation fuel.

The County issued a Request for Proposals with a response date of April 1, 2005 (Ex. A-23).

This RFP was different from a request for competitive bids with specifications.  It asked each proposer to submit a business plan with no preconceptions except for adherence to the Airport's Minimum Standard requirements.  The terms and conditions of the RFP included the following:

The County reserved the right:

1      To select one, two, or more respondents with whom the County may pursue negotiations pursuant to this RFP.

2      To reject any and all proposals received pursuant to

this RFP for whatever reason deemed necessary or for no specified reason.

3      To amend or otherwise modify this RFP prior to the submission date and to cancel this RFP with or without the substitution of another RFP.

4      To request more detailed qualifications statements and/or references and to conduct investigations with respect to the qualifications and/or reputations claimed by proposer.

5      To not proceed with the evaluation process as indicated by this RFP for whatever reason.

6      To require additional information to clarify or supplement proposals.

7      To expressly waive any non-compliance with an insubstantial requirement of this RFP in any proposal submitted.

8      To negotiate regarding unacceptable provisions incorporated in an otherwise acceptable proposal.

Exhibit A-23

While the RFP was for a lease, there was no legal description of the premises.

That, too, would be negotiated.

The County formed a committee (FBO Committee) to review the proposals, to

recommend whether to privatize the Airport and, if so, which applicant should be

accepted.  The county manager, Dennis Hunt, and Scott Brownlee, Airport Manager,

selected the members of the FBO Committee.  Brownlee, County Attorney Fritze, a

banker and three airport employees were appointed.

Steve Stuhmer, a principal of JetAway, delivered its proposal to the airport

administration office at about 3:00 p.m. on April 15, 2005.  The proposal was in multiple

binders in a footlocker that was sealed and marked.  When Stuhmer returned about an hour later, he saw that the footlocker had been opened.  JCP's proposal was delivered almost two hours later.

Jeanette Anderies, an airport employee and member of the FBO review committee, opened the footlocker and was seen looking at a copy of JetAway's proposal by Scott Brownlee who admonished her.  When Stuhmer returned, he was told that Anderies had gone for the day.

The JetAway proposal was based on its existing facility.  The land was to be conveyed to the County at no cost and leased back to JetAway which would also lease the adjacent Airport land to develop a ramp area.  JetAway pointed out that this was a unique proposal which would provide a full range of FBO services immediately.  Ex. A-27.

The JCP proposal provided for construction of a hangar, terminal and a parking area on leased space on the Airport.

The FBO review committee recommended that the County continue to operate the FBO but if the contrary conclusion was reached the negotiations should be with JCP.

On August 15, 2005, Commissioners Ubell, Patterson and Belt unanimously voted to negotiate with JCP.  On December 5, 2005, the County adopted amended minimum standards, replacing some of the 2003 standards referred to in the RFP.  The amended standards conformed to the JCP FBO Agreement, executed on the same day.

JetAway did not stop its efforts to provide FBO services after JCP's agreement.  In addition to its multiple proposals, JetAway has engaged the County in litigation in the

District Court of Montrose County regarding its lease agreements for the JetAway

facility. That litigation ultimately resulted in an injunction barring JetAway's access to the

Airport.  JetAway also filed two complaints with the FAA, contending that denial of its

access to the Airport violated the conditions of Federal grants.  The FAA rejected those

complaints.

This case was filed on December 10, 2007.  After prolonged discovery

and motion hearings, the claims now before this court are for violation of Sections 1 and

2 of the Sherman Act, for denial of equal protection of the law in violation of the

Fourteenth Amendment, and for an unconstitutional burden on interstate commerce.

All of the defendants are accused of collusion in the RFP process.  The plaintiff

attempts to equate this case with the type of bid rigging that constitutes a *per se*

violation of the Sherman Act.  It does not fit.  They involve horizontal competitors who

agree on which bidder will win the contest.  Here the allegation is that the County had

selected JCP to be the FBO operator even before issuing the RFP.  The disputed

evidence may support that finding.  That, however, is not illegal.  The County made it

clear that the RFP was only the first step in the selection process.  The proposals were

reviewed to determine the entity with which negotiations would be conducted.  The

County was free to make that selection without the use of an RFP.

The plaintiff's retained economist, Dr. Philip Nelson, compared the proposals of

JCP and JetAway, reaching the conclusion that JetAway's approach would have been

significantly better for the financial benefit to the County both in the short and long term.

That, however, is not determinative of the antitrust claims.

The plaintiff suggests that Patterson, Egan or someone for JCP had knowledge

of JetAway's proposal before JCP's bid was submitted.  There is evidence that Anderies

saw the plaintiff's proposal when it was delivered and that she left the office shortly

thereafter.  It is only an unwarranted speculation that she communicated what she saw

to anyone acting on behalf of JCP or that JCP had sufficient time to alter its proposal

before submitting it a few hours later.

The County's preference for JCP was demonstrated by accepting the

modification of the minimum standards it proposed and by accepting JCP's proposals in

negotiating the final terms of the FBO contract.

The execution of the FBO contract with JCP on December 5, 2005, did not deter

JetAway from pursuing an opportunity to provide FBO services.  It continued to provide

aircraft hangaring, a pilot lounge and related services from its offsite location until it was

enjoined by the state court.

JetAway did not limit its efforts to persuasion.  It filed four lawsuits against the

County in January, 2006, shortly after JCP began operations.  It complained to the FAA

that the Airport violated the terms of the grant by granting an exclusive to JCP.

These efforts failed and as of this time JetAway's business has been shut down

in consequence of the state court litigation.

JetAway contends that all of its efforts to conduct business on the Airport have

been blocked by the combined efforts of the defendants to preserve an illegal

monopoly.

The critical legal question in this case is whether JetAway has provided sufficient

admissible evidence to support a finding that there has been an injury to competition.

The plaintiff argues that its proposal was so much better than that of JCP, the

selection of the latter injured the citizenry of Montrose County financially. It further contends that the defendants' protection of JCP from later entry by JetAway has caused injury to the users of the Airport by subjecting them to higher prices and inferior services.

The plaintiff's forensic witness, Dr. Nelson, has constructed an elaborate theory of liability and damages.  He has defined the relevant market as FBO services at the Airport and that may be accepted. What is most significant is his conclusion that while there may be a period of competition between two competing FBO's, for a limited time, perhaps one year, the market can sustain only one operator.

It is well established law that the anti-competitive conduct that violates the Sherman Act must have more than a temporary effect on the market.  Taking all of Dr. Nelson's assumptions at face value, the net effect of his analysis is that if JetAway had been able to compete as a second FBO on equal terms with JCP the result would have been that JCP's business would fail and JetAway would be the sole survivor.  In essence, the plaintiff admits that the size of the business opportunity at the Airport limits that market to a single FBO operator.  Thus, their case falls within the rule that the antitrust law does not criminalize the protection of one monopolist from the aggressive efforts of another seeking to replace it.

JetAway has gone to great lengths to attempt to prove sinister motives to keep it out of the Airport.  It makes much of the notes taken by Commissioner David White during two conversations with Kevin Scott after Scott left JCP and during White's exploration of his concerns about JCP's leases with the County.  The plaintiff's interpretation of these notes are suggestive of manipulation of the former

commissioners and the partisanship of William Patterson to control the process to ensure JCP's success.

The notes are inadmissible double hearsay.  In his deposition, White could not explain his notes and the plaintiff's interpretation is not supported by Scott's testimony in his deposition.  At best what is shown is favoritism toward JCP and antagonism toward JetAway, particularly Stuhmer.

It may be that the Commissioners who signed the FBO agreement with JCP did not act in the best interest of their constituents and permitted themselves to be unduly influenced by personalities.  That is a matter of political concern; it is not an antitrust conspiracy.

JetAway has sued Patterson individually.  He is protected from liability for damages by the Local Government Antitrust Act of 1984 (LGAA), 15 U.S.C. §§ 34-36. The plaintiff seeks to avoid that immunity by contending that Patterson's conduct was not within the scope of his official capacity.  There has been a vigorous effort to prove by inference that Patterson's actions were improperly motivated by personal interest. His prior experience at the Airport with Rumble, his friendship with Rumble and his distaste for Stuhmer have been stressed.

The plaintiff argues that the die was cast for privatization and the preferred selection of JCP at a meeting with Scott and Rumble after Patterson's election and before he took office.  Assuming the fairness of that interpretation, all of the actions that were necessary to accomplish the presumed plan were taken by Patterson in his official capacity.  There is no evidentiary support for the suggestion that Patterson's official actions were corrupted by any presumed personal advantage.

Because the LGAA precludes a damages recovery from Montrose County, JetAway asks for injunctive relief by requiring that it be given an airport access for a competing FBO.  There has been a collateral controversy in this case regarding a 9 acre site that may be developed.  That, however is, in itself, a problematic matter. Compliance with the safety related requirements of the FAA and other regulatory restrictions of the County would entail such extensive involvement of this Court into the governance of Montrose County that would itself be an extension of equitable power of questionable validity under the constitutional limitations of federalism.  At any rate, the relief sought is impracticable.

The Montrose County Building Authority is a Colorado Nonprofit Corporation formed for the limited purpose of holding legal title to the Airport land.  It is not protected by the LGAA.  It leases the Airport to the County and its non-government status was used to issue certificates of participation to obtain financing for improvements to the Airport, including the construction of an access road and an aircraft parking apron for the benefit of JCP's operation.  The plaintiff protests the use of public funds for private benefit but it has not shown the illegality of these financing arrangements and there has been no showing of any active involvement of the MCBA in any of the actions claimed to be in violation of the Sherman Act.

JetAway claims damages from JCP and its principals, Kevin Egan and James Rumble as conspirators with the County and as direct actors in creating a monopoly. They defend by asserting that all of these dealings with the County are within the shield of the First Amendment under the Noerr-Pennington Doctrine.

The Supreme Court, in deciding *Columbia v. Omni Outdoor Advertising, Inc.,* 499

U.S. 365 (1991), emphasized the distinction between the purpose of the antitrust laws to protect competition in the business world and the political decisions of governmental officials even when those decisions have been infected by "selfishly motivated agreement with private interests."  *Id.* at 383.

The Tenth Circuit Court of Appeals applied Noerr-Pennington in *G F Gaming Corp. V. City of Black Hawk, Colo.*, 405 F.3d 876 (10th Cir. 2005) and *Coll v. First American Title Ins. Co.,* 642 F.3d 876 (10th Cir. 2011).  In the latter case, the court concluded that even bribery of public officials to induce decision making with anti-competitive effect does not create an exception to this immunity. All of the conduct complained of in this case against the non-government defendants required decision making by County officials and, therefore, all of it comes within Noerr-Pennington immunity.

The defendants are entitled to summary judgment of dismissal of the claims of violation of Sections 1 and 2 of the Sherman Act.

JetAway claims a violation of the equal protection clause of the Fourteenth Amendment because it was intentionally treated differently from JCP.  This is a "class of one" claim requiring proof that the County acted arbitrarily by imposing requirements that were different from those affecting JCP for the purpose of barring JetAway's entry to the Airport.  This argument has no merit. Assuming that Patterson and others were in part motivated by ill will towards Stuhmer and his company, there are a myriad of reasons for the County's preference of JCP for this business relationship.  Many of those reasons are identified in the rulings of the state court that resulted in the closure of the plaintiff's through the fence operations.

The final effort to obtain some relief in this civil action is the claim that in establishing JCP's monopoly the County has imposed a burden on interstate commerce by enabling JCP to manipulate prices. This argument runs contrary to the plaintiff's contention that the relevant market for measuring competition is the local airport.  There is nothing to support a finding that there has been harm to the free flow of commerce between the states.

Upon the foregoing, it is

ORDERED, that the defendants' motions for summary judgment are granted. The Clerk shall enter judgment for the defendants, dismissing this civil action and for an award of costs.

DATED:   March 28th, 2012

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge